UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARI MARKS-ELLIS, | |
| Plaintiff, | 23 Civ. 9618 (KPF) |
| -v.- | **OPINION AND ORDER** |
| NYU LANGONE HEALTH SYSTEMS, | |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

*Pro Se* Plaintiff Ari Marks-Ellis was refused entry to a private room at a hospital at which he was not a patient.  He responded by filing a lawsuit charging the hospital with discrimination on the basis of Plaintiff's religion under federal, state, and local law.  Now before the Court is Defendant NYU Langone Health Systems's ("Defendant" or "the Hospital") motion to dismiss Plaintiff's Amended Complaint.  For the reasons that follow, the Court grants Defendant's motion and dismisses Plaintiff's Amended Complaint for lack of standing to seek injunctive relief pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND[1]

### A.    Factual Background

This action arises out of events that occurred on July 6, 2023, at two NYU-affiliated medical facilities in Midtown Manhattan.  (*See* Compl. 5).  On

---

[1]    This Opinion draws its facts from the initial Complaint ("Compl." (Dkt. #1)), as amended by Plaintiff's August 14, 2024 letter ("Pl. Ltr." (Dkt. #22)) and orally at the August 22, 2024 pre-motion conference (Dkt. #23 (the "Conference Transcript" or "Conf. Tr."))

that day, Plaintiff had an orthopedic appointment at an NYU-affiliated outpatient center located at 333 East 38th Street. (*Id.*). Plaintiff, who describes himself as "a visibly religious Jew" (*id.*), inquired about whether the facility offered kosher food from a Bikur Cholim room (Conf. Tr. 5:2-6).[2] An employee at the outpatient facility informed Plaintiff that there was no Bikur Cholim room at that facility, but that there was such a room at the NYU Kimmel Pavilion located at 424 East 34th Street ("the Hospital"), a few blocks away. (*Id.* at 5:6-21; Compl. 5). Plaintiff then proceeded to walk to the Hospital. (Conf. Tr. 5:23-24).

When Plaintiff entered the Hospital, he asked an employee at the front desk whether he could visit the facility's Bikur Cholim room. (Conf. Tr. 6:1-4). The employee looked up Plaintiff's name and, finding that he was not a patient at the Hospital, informed Plaintiff that he could not go to the Hospital's Bikur Cholim room. (*Id.* at 6:5-24). A manager was called, and the manager informed Plaintiff that the Bikur Cholim room was only for Hospital patients.

---

(collectively, the "Amended Complaint"), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Court also relies, as appropriate, on certain of the exhibits attached to the Declaration of Roy W. Breitenbach ("Breitenbach Decl., Ex. [ ]" (Dkt. #29)).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss the Amended Complaint as "Def. Br." (Dkt. #30); to Plaintiff's letter in opposition to Defendant's motion to dismiss as "Pl. Opp." (Dkt. #32); and to Defendant's reply memorandum of law in further support of its motion to dismiss as "Def. Reply" (Dkt. #33).

[2]     Bikur Cholim is a private charity that provides kosher food at certain NYU facilities. *See Religious Services, Items & Meal Requests*, NYU Langone Health, nyulangone.org/patient-family-support/spiritual-religious-chaplaincy-services-for-adults/religious-services-items-meal-requests (last visited June 25, 2025) ("If you have religious dietary needs, such as kosher or halal, please inform your nurse. We also have Bikur Cholim rooms, where kosher meals and snacks are available.").

(*Id.* at 8:3-8).  Plaintiff protested that other people were eating food that they had purchased from the Hospital's public cafeteria, while he could not eat unless he could access the kosher food in the Hospital's Bikur Cholim room. (*Id.* at 8:9-15).  The manager responded that the Bikur Cholim food was "free," which statement Plaintiff characterizes as expressing "an age-old Jewish trope" that "Jews are 'stingy.'"  (*Id.* at 8:16-21; Pl. Ltr. 1).  Plaintiff claims that the Hospital's preventing him from accessing the Bikur Cholim room while other individuals, even those not affiliated with the Hospital, were able to eat non-kosher food from the Hospital's public cafeteria, as well as allegedly antisemitic undertones to comments made by Hospital staff when denying him access, amounted to discrimination.  (Conf. Tr. 18:9-19:22; Pl. Ltr. 1).

Plaintiff also came to understand, from speaking with the Hospital employees, that it was the Hospital's policy only to allow patients of the Hospital, and not patients of other NYU-affiliated facilities, to access the Hospital's Bikur Cholim room.  (Conf. Tr. 10:16-12:22).  The Hospital employees informed Plaintiff of an exception to this policy, namely, that "if you know someone who's in the building who can bring [food from the Bikur Cholim room] to you, then [the Hospital] will let you do that."  (*Id.* at 13:18-22). After he was told he could not access the Hospital's Bikur Cholim room, Plaintiff took advantage of this exception by calling the Bikur Cholim organization, which sent a representative from the Hospital's Bikur Cholim room to deliver food to Plaintiff.  (*Id.* at 13:22-14:3).

B.    **Procedural Background**

Plaintiff, proceeding *pro se*, initiated this action by filing the Complaint on October 13, 2023, in the United States District Court for the Eastern District of New York.  (Dkt. #1).  Plaintiff also moved to proceed *in forma pauperis*.  (Dkt. #2).  In the Complaint, Plaintiff checked a box for "Federal question" jurisdiction and listed the basis for such jurisdiction as "Title II of [the] Civil Rights Act."  (Compl. 4).  On October 20, 2023, Magistrate Judge James R. Cho ordered that the action be transferred to this District, which was the proper venue because the incident described in the Complaint occurred in Manhattan.  (Dkt. #4).  The action was accordingly transferred to this District on November 1, 2023.  (Dkt. #5).

On March 6, 2024, Plaintiff's motion for leave to proceed *in forma pauperis* was granted (Dkt. #6), and the action was assigned to the undersigned (March 6, 2024 Minute Entry).  The Court issued an order of service on March 12, 2024.  (Dkt. #8).  On April 11, 2024, the Court scheduled an initial pretrial conference for July 11, 2024.  (Dkt. #11).  On July 9, 2024, Defendant filed a letter requesting a pre-motion conference regarding its anticipated motion to dismiss the complaint.  (Dkt. #17).  The Court informed the parties that it would address this anticipated motion at the previously scheduled initial pretrial conference.  (Dkt. #18).  The initial pretrial conference took place via telephone on July 11, 2024, however, Plaintiff did not appear because he had moved and was not aware of the conference.  (July 11, 2024

Minute Entry).  Thereafter, Plaintiff requested, and the Court scheduled, a pre-motion conference to take place on August 22, 2024.  (Dkt. #19, 20).

In advance of the rescheduled pre-motion conference, on August 5, 2024, Plaintiff filed a letter opposing Defendant's anticipated motion to dismiss and providing more detail about the July 6, 2023 incident.  (Dkt. #22).  The pre-motion conference took place via telephone on August 22, 2024.  (August 22, 2024 Minute Entry).  The Court considered Plaintiff's Complaint to be amended by the statements Plaintiff made at the pre-motion conference and in his August 5, 2024 letter (collectively, the "Amended Complaint").  (Conf. Tr. 23:6-9).  The Court set a briefing schedule for Defendant's motion to dismiss the Amended Complaint.  (*Id.* at 50:7-52:2).

After the Court granted Defendant's request for an extension (Dkt. #28), on November 18, 2024, Defendant filed its motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and its opening brief in support thereof.  (Dkt. #29, 30).  Plaintiff filed a letter in opposition to Defendant's motion on December 17, 2024.  (Dkt. #32).  And on January 21, 2025, Defendant filed a reply brief in further support of its motion.  (Dkt. #33).

## DISCUSSION

### A.  Applicable Law

#### 1.    Federal Rule of Civil Procedure 12(b)(1)

A defendant may move to dismiss claims for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  "Article III

confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC* v. *Ramirez*, 594 U.S. 413, 423 (2021). To "demonstrate [his] personal stake" and establish standing to bring suit, a plaintiff "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Article III standing "is a 'jurisdictional' requirement and 'must be assessed before reaching the merits.'" *Calcano* v. *Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Byrd* v. *United States*, 584 U.S. 395, 410-11 (2018)). As such, Rule 12(b)(1) is the appropriate vehicle for an argument that the plaintiff lacks standing. *See Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### 2.    Federal Rule of Civil Procedure 12(b)(6)

A defendant may also move to dismiss claims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009). A plaintiff is

entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 570)).

That said, a court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted and alteration adopted) (quoting *Iqbal*, 556 U.S. at 678)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557-58).

On a motion to dismiss under Rule 12(b)(6), a court "may review only a narrow universe of materials." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  This includes "any written instrument attached to the [c]omplaint as an

exhibit, any statements or documents incorporated by reference in the [c]omplaint, documents that are 'integral' to the [c]omplaint even if they are not incorporated by reference, and matters of which judicial notice may be taken." *Donoghue* v. *Gad*, No. 21 Civ. 7182 (KPF), 2022 WL 3156181, at *2 (S.D.N.Y. Aug. 8, 2022) (citing *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Goel.*, 820 F.3d at 559).

Furthermore, when a plaintiff is *pro se*, "courts must construe [his] pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'" *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). "However inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Legeno* v. *Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009) (summary order) (internal quotation marks and alterations omitted) (quoting *Posr* v. *Ct. Officer Shield No. 207*, 180 F.3d 409, 413-14 (2d Cir. 1999)). "That said, the liberal pleading standard accorded to *pro se* litigants is not without limits, and all normal rules of pleading are not absolutely suspended." *Hill* v. *City of New York*, No. 13 Civ. 8901 (KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) motion to dismiss, a *pro se* plaintiff's factual allegations still must at least "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And even in the *pro se* context, the court is not bound to accept "conclusory allegations or legal

conclusions masquerading as factual conclusions." *Rolon*, 517 F.3d at 149

(quoting *Smith*, 291 F.3d at 240).

## B.  Analysis

### 1.  Overview

Plaintiff, who identifies as Jewish, brings a claim under Title II of the

Civil Rights Act of 1964, as well as several state and local statutes, for

discrimination on the basis of his religion.  (*See* Compl. 4-5; Conf. Tr. 32:11-

34:12).[3]  Title II provides, in relevant part, that "[a]ll persons shall be entitled to

the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, and accommodations of any place of public accommodation, as

defined in this section, without discrimination or segregation on the ground of

race, color, religion, or national origin."  42 U.S.C. § 2000a(a).  "In order to

bring a claim under Title II, a plaintiff must 'allege facts showing [i] that he was

deprived of equal use and enjoyment of a place of public accommodation and

[ii] facts which demonstrate discriminatory intent.'"  *Alexander* v. *JP Morgan

Chase Bank, N.A.*, No. 19 Civ. 10811 (OTW), 2021 WL 1061833, at *2 (S.D.N.Y.

Mar. 18, 2021) (quoting *Akyar* v. *TD Bank US Holding Co.*, No. 18 Civ. 379

(VSB), 2018 WL 4356734, at *5 (S.D.N.Y. Sept. 12, 2018)); *see also Coward* v.

*Town and Vill. of Harrison*, 665 F. Supp. 2d 281, 307 (S.D.N.Y. 2009).  As set

forth in the remainder of this Opinion, Plaintiff has both standing and pleading

deficiencies that imperil his claims.

---

[3]    Plaintiff's analogous claims under state and local discrimination statutes are discussed in greater detail *infra*.

### 2.    Plaintiff Lacks Standing to Seek Injunctive Relief

Before addressing the merits of Plaintiff's claims, the Court must consider the antecedent issue of standing.  A plaintiff cannot satisfy the injury in fact element of Article III standing where he seeks prospective equitable relief for a past injury unless the plaintiff can demonstrate that he is likely to be harmed again in the future in a similar way.  *See City of Los Angeles* v. *Lyons*, 461 U.S. 95, 111-12 (1983); *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *Dorce* v. *City of New York*, 2 F.4th 82, 95 (2d Cir. 2021).  Past wrongs alone "'do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy' with respect to potential future similar wrongs.'"  *Dorce*, 2 F.4th at 96 (quoting *Lyons*, 461 U.S. at 103). "That a past harm was severe or inflicts continuing damage does not change that rule: the remedy for continuing pain and suffering from a defendant's past damage is compensatory damages, as an injunction against future actions by a defendant does not remedy the harm done by that defendant's past acts."  *Id.* at 96; *see also Nicosia*, 834 F.3d at 239.

Plaintiff does not expressly seek injunctive relief, but the Court assumes that he does because he brings claims under statutes that allow for injunctive relief (including one that exclusively permits injunctive relief).  As noted, Plaintiff brings a claim under Title II of the Civil Rights Act of 1964.  (Compl. 4). "It is well established … that individual plaintiffs cannot recover damages for claims brought under Title II; rather, only injunctive relief is available as a remedy."  *Alexander* v. *Priv. Protective Servs., Inc.*, No. 19 Civ. 10004 (JPO),

2022 WL 1567447, at *2 (S.D.N.Y. May 18, 2022) (internal quotation marks omitted and alterations adopted); *see also Powell* v. *Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir.) (citing *Newman* v. *Piggie Park Enters.*, 390 U.S. 400, 402 (1968) (holding that only injunctive relief is available as a remedy for Title II violations)), *op. corrected*, 511 F.3d 238 (2d Cir. 2004).  Further, Plaintiff's related state-law claims (which the Court reads the Amended Complaint to raise) are brought under statutes that also allow for injunctive relief.  The New York State Human Rights Law (the "NYSHRL") and the New York City Human Rights Law (the "NYCHRL") each authorize injunctive relief as a remedy for discriminatory conduct in places of public accommodation.  *See* N.Y. Exec. Law § 297(9) (providing that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice [under the NYSHRL] shall have a cause of action in any court of appropriate jurisdiction for damages" and "such other remedies as may be appropriate"); N.Y.C. Admin. Code § 8-502(a) (providing that "any person claiming to be a person aggrieved by an unlawful discriminatory practice" under the NYCHRL "shall have a cause of action in any court of competent jurisdiction for damages … and for injunctive relief and such other remedies as may be appropriate").

Plaintiff lacks standing to seek injunctive relief under any of these statutes because he cannot establish the threat of a future similar injury.  *Cf. Lyons*, 461 U.S. at 111-12; *Nicosia*, 834 F.3d at 239; *Dorce*, 2 F.4th at 95; *Calcano*, 36 F.4th at 74; *Mendez* v. *Apple Inc.*, No. 18 Civ. 7550 (LAP), 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019) (noting that requests for injunctive

relief under the NYSHRL and NYCHRL are "governed by the same standing requirements as the ADA").  Plaintiff moved from New York to Georgia after bringing this action.  (*See* Conf. Tr. 31:20-32:10; *see also* Dkt. #19).  Plaintiff does not plausibly allege that he will experience a similar alleged injury in the future, as this entire action arises from Plaintiff's experience at the Hospital after visiting another NYU-affiliated building in Manhattan where he had an orthopedic appointment, and he has alleged no intent to return to that orthopedist or to the Hospital now that he has moved several hundred miles away to Georgia.  (*Cf.* Conf. Tr. 4:17-5:21).  Without allegations substantiating his intent to return to the Hospital, Plaintiff lacks standing to seek injunctive relief.  *See Calcano*, 36 F.4th at 74-75 (finding, in the analytically similar context of the ADA, that "the central inquiry" when assessing a plaintiff's "intent to return based on past visits and proximity" is whether, "examined under the totality of all relevant facts, the plaintiff plausibly alleges a real and immediate threat of future injury" (internal quotation marks omitted)).

Conversely, to the extent the Court takes Plaintiff at his word that he exclusively seeks punitive damages and does not seek injunctive relief (*see* Compl. 6; Pl. Ltr. 2; Pl. Opp. 2), his claim under Title II (which, again, allows only for injunctive relief, *see Priv. Protective Servs.*, 2022 WL 1567447, at *2) cannot be redressed.  "To satisfy the redressability element of Article III standing, a plaintiff must show that it is 'likely as opposed to merely speculative, that the [alleged] injury will be redressed by a favorable decision.'" *Soule* v. *Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 47 (2d Cir. 2023) (alteration in

12

original) (quoting *Lujan*, 504 U.S. at 561).  "A plaintiff makes this showing
when the relief sought 'would serve to … eliminate any effects of' the alleged
legal violation that produced the injury in fact."  *Id.* (omission in original)
(quoting *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 105-06 (1998)).
The relief Plaintiff seeks (damages) simply cannot redress a Title II violation.
Consequently, Plaintiff lacks standing with respect to his Title II claim to the
extent he exclusively seeks damages.

### 3. Plaintiff Fails to State a Claim Under Title II of the Civil Rights Act of 1964

The Court recognizes that, in instances in which it determines that it
lacks subject matter jurisdiction, as it has here regarding Plaintiff's Title II
claims, the preferred course of action is to refrain from considering other
arguments proffered by the movant.  *See, e.g.*, *Cornwell* v. *Credit Suisse Grp.*,
666 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2009) ("[A]bsent authority to adjudicate,
the Court lacks a legal basis to grant any relief, or even consider the action
further."); *Norex Petroleum Ltd.* v. *Access Indus., Inc.*, 540 F. Supp. 2d 438, 449
(S.D.N.Y. 2007) (observing that dismissal for lack of subject matter jurisdiction
"moots, and thus terminates, all other pending motions").  However, given
Plaintiff's *pro se* status, as well as his remaining claims for damages under
several state laws that implicate similar analyses, the Court believes it prudent
to consider the merits of all of Plaintiff's claims.  Ultimately, the Court finds
that Plaintiff fails to allege a Title II claim because (i) the Hospital is not a place
of public accommodation and (ii) he has failed to allege facts that demonstrate

discriminatory intent by the Hospital; and that his state and local claims fail for similar reasons.

### a.    The Hospital Is Not a Place of Public Accommodation

Title II defines "place of public accommodation" as certain enumerated establishments, if the establishment's "operations affect commerce, or if discrimination or segregation by it is supported by State action."  42 U.S.C. § 2000a(b).  The enumerated establishments include:

> (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;
>
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
>
> (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and
>
> (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

*Id.*  "The list of places of public accommodation within the statute is considered exhaustive, not illustrative."  *Alexander*, 2021 WL 1061833, at *3 (citing *Akyar*, 2018 WL 4356734, at *5 (citing *Renxiong Huang* v. *Minghui.org*, No. 17 Civ. 5582 (ER), 2018 3579103, at *3 (S.D.N.Y. July 25, 2018))).  Courts in this

Circuit routinely find that establishments not expressly enumerated are not places of public accommodation.  *See, e.g.*, *id.* at *3 (bank); *Akyar*, 2018 WL 4356734, at *5 (bank); *see also Harris* v. *Enter. Holding Inc.*, No. 24 Civ. 5634 (MMG), 2025 WL 219356, at *2 (S.D.N.Y. Jan. 16, 2025) (car rental facility); *Alcala* v. *MTA Metro. State Auth.*, No. 24 Civ. 7331 (EK) (LB), 2025 WL 43168, at *2 (E.D.N.Y. Jan. 7, 2025) (train station); *Minghui.org*, 2018 WL 3579103, at *4 ("religious conferences, demonstrations, and parades"); *James* v. *Am. Airlines, Inc.*, 247 F. Supp. 3d 297, 305-06 (E.D.N.Y. 2017) (aircraft).

A hospital is not one of the enumerated establishments in Section 2000a. Courts in this Circuit have dismissed Title II claims for that reason.  *See Verhagen* v. *Olarte*, No. 89 Civ. 300 (CSH), 1989 WL 146265, at *4 (S.D.N.Y. Nov. 21, 1989) ("[T]he particular establishments covered by the federal statute do not include hospitals."); *see also Goonewardena* v. *N. Shore Long Island Jewish Health Sys.*, No. 11 Civ. 2456 (MKB) (LB), 2012 WL 7802351, at *10 (E.D.N.Y. Nov. 5, 2012) (finding Title II "inapplicable to the private hospital herein"), *report and recommendation adopted*, No. 11 Civ. 2456 (MKB), 2013 WL 1211496 (E.D.N.Y. Mar. 25, 2013), *aff'd*, 597 F. App'x 19 (2d Cir. 2015) (summary order); *Anghel* v. *Saint Francis Hosp. & Med. Ctr.*, No. 03 Civ. 864 (AWT) (DFM), 2007 WL 9719256, at *5 (D. Conn. Sept. 26, 2007) ("Hospitals are not listed among the establishments to which Title II applies."), *report and recommendation adopted*, No. 03 Civ. 864 (AWT), 2007 WL 9719257 (D. Conn. Oct. 22, 2007).  Courts in other Circuits have also concluded that hospitals and similar medical clinics are not places of public accommodation under Title

15

II. *See, e.g.*, *Castillo* v. *Receptionist for Cathy Polcinik*, No. 15 Civ. 2296 (JFL), 2016 WL 4124057, at *3 (E.D. Pa. Aug. 3, 2016); *Ford* v. *Surprise Fam. Urgent Care Ctr., LLC*, No. 10 Civ. 1920 (PHX) (SRB), 2011 WL 13137866, at *2-3 (D. Ariz. Sept. 6, 2011); *Foster* v. *Howard Univ. Hosp.*, No. 06 Civ. 244 (JDB), 2006 WL 2938701, at *2 (D.D.C. Oct. 13, 2006).

A hospital may nevertheless qualify as a place of public accommodation under Title II if it hosts an enumerated type of establishment on its premises and holds itself out as serving patrons of that enumerated establishment. 42 U.S.C. § 2000a(b)(4); *see Castillo*, 2016 WL 4124057, at *3. It follows that a hospital that includes a cafeteria that serves the public could be a place of public accommodation, provided that — as the Seventh Circuit reasoned in an opinion authored by then-Circuit Judge Stevens — "the *hospital* [holds] *itself* out as serving the patrons of the … cafeteria." *Dombrowski* v. *Dowling*, 459 F.2d 190, 197-98 n.20 (7th Cir. 1972) (emphases in original); *see also Ramirez* v. *Adventist Med. Ctr.*, No. 17 Civ. 831 (SI), 2017 WL 4798996, at *6 (D. Or. Oct. 24, 2017) ("Plaintiff has not alleged whether Adventist has a public cafeteria and, if so, whether Adventist held itself out as serving the patrons of the cafeteria.").

Plaintiff does allege that the Hospital had a publicly accessible cafeteria, but Plaintiff's claim does not arise out of that publicly accessible cafeteria. His claim is against the Hospital *qua* hospital, and not against the Hospital *qua* servicer of public cafeteria patrons. As Plaintiff tells it, when he entered the Hospital, there was a cafeteria "where one can go in and buy food" to his right

16

and "a waiting room where [one] can eat that food" to his left.  (Conf. Tr. 9:3-17).  One could purchase food in this cafeteria without being a Hospital patient.  (*Id.* at 10:1-11).  By contrast, Plaintiff appreciated that to access the Hospital's Bikur Cholim room, one needed to be a Hospital patient.  (*Id.* at 10:16-11:21, 13:12-14:11).  Eventually, Plaintiff obtained food from the Bikur Cholim room when someone working in the room came down to the area where Plaintiff was and brought him food.  (*Id.* at 16:21-17:21).  The Hospital did not hold itself out as serving Bikur Cholim food to patrons of the public cafeteria.  That food was accessible only to Hospital patients.  Therefore, Plaintiff does not plausibly allege that the Hospital is a "place of public accommodation" under Section 2000a(b)(4), either.

### b.    Plaintiff Does Not Plausibly Allege Discriminatory Intent by Defendant

Nor does Plaintiff plausibly allege "facts which demonstrate discriminatory intent."  *Alexander*, 2021 WL 1061833, at *2.  "At the motion to dismiss stage, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of … discriminatory intent."  *Lurch* v. *City of New York*, No. 19 Civ. 11253 (AJN), 2021 WL 1226927, at *4 (S.D.N.Y. Mar. 31, 2021) (internal quotation marks omitted) (quoting *Guichardo* v. *Langston Hughes Queens Libr.*, No. 15 Civ. 2866 (MKB), 2015 WL 13227995, at *4 (E.D.N.Y. Nov. 20, 2015) (quoting *Gant* v. *Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995))).  "A plaintiff may prove discriminatory intent, motive, or purpose by

direct evidence or by circumstantial evidence, including evidence of the difference in treatment." *Coward*, 665 F. Supp. 2d at 307.

Plaintiff does not allege facts demonstrating direct or circumstantial evidence of the Hospital's intent to discriminate against him on the basis of his religion. Plaintiff describes himself as "a visibly religious Jew." (Compl. 5; *see also* Pl. Ltr. 1). Plaintiff was a patient at an outpatient NYU-affiliated orthopedic clinic on East 38th Street, and, following his appointment, went to the Hospital on East 34th Street because he had been told he could obtain kosher food there. (Compl. 5; Pl. Ltr. 1). After finding no kosher food in the public cafeteria near where he entered the building, Plaintiff asked an employee at the front desk if he could visit the Bikur Cholim room. (Conf. Tr. 5:23-6:6). The employee informed Plaintiff that he could not visit the Bikur Cholim room because he was not a Hospital patient. (*Id.* at 6:7-10). The employee told him that this was the Hospital's policy, and although she had previously raised this issue with her manager, the policy remained in place. (*Id.* at 6:17-7:25; *see also id.* at 11:1-21 (Plaintiff appreciated that Hospital employees "were not allowed to let people ... from other buildings" into the Bikur Cholim room and "didn't witness any other person going to the Bikur Cholim room that didn't have an appointment")). The employee then called her manager, who likewise informed Plaintiff that the Bikur Cholim room was only for Hospital patients. (*Id.* at 8:3-8). Plaintiff protested that anyone could "walk in off the street and partake of" food offered in the public cafeteria, but he could not. (*Id.* at 8:9-15). Plaintiff alleges that the manager responded that the Bikur Cholim food is

18

"free," which Plaintiff characterizes as "an age-old Jewish trope," and which Plaintiff alleges was said in a way that "was just insulting as could be." (*Id.* at 8:16-21; *see also id.* at 21:7-10 (calling the comments about the free food a "classic antisemitic trope")). A second manager reiterated that the Bikur Cholim food was "free." (*Id.* at 12:9-22).

The managers also informed Plaintiff of an exception to the policy, namely, that if he knew someone in the building who could bring him food from the Bikur Cholim room, the Hospital would allow that. (Conf. Tr. 13:18-25). Plaintiff took advantage of this exception and retrieved food from the Bikur Cholim room by placing a call to the Bikur Cholim organization, which sent an employee downstairs with kosher food for Plaintiff. (*Id.* at 16:8-17:21).

Plaintiff was certainly offended by what the managers said to him. But Plaintiff does not sufficiently allege that these statements were motivated by discriminatory intent. Rather, Plaintiff's allegations support only one plausible inference: that the Hospital employees were simply enforcing the Hospital's policy against allowing non-patients to access the Bikur Cholim room's kosher food, which is limited in supply and offered for free to Hospital patients.[4] Plaintiff understood that the Hospital had a policy disallowing individuals who were not Hospital patients to access the Bikur Cholim room. He does not allege that other non-patients were allowed access to the Bikur Cholim room whereas he was not. Accordingly, "[e]ven given the special solicitude owed to

---

[4]    The Court also finds it likely that the policy was in place for security reasons. While the cafeteria was in a public area and accessible upon entrance to the Hospital, the Bikur Cholim room was further within the Hospital. (*See* Conf. Tr. 9:3-17, 16:8-17:21).

*pro se* plaintiffs," Plaintiff's allegations that Hospital employees were motivated by antisemitic discriminatory intent "fail to surpass the plausibility standard because they lack non-conclusory facts to support them." *Lurch,* 201 WL 1226927, at *4. Plaintiff's discrimination claim is simply "too conclusory to survive." *Id.*[5]

### 4. Plaintiff Fails to State a Claim Under Section 1981 of the Civil Rights Act of 1866

Plaintiff's allegations might also be read to allege a violation of Section 1981 of the Civil Rights Act of 1866, which provides, in relevant part, that "[a]ll persons ... shall have the same right in every State and Territory to ... the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). (*See* Def. Br. 12 (raising Section 1981)). To establish a claim under Section 1981, "a plaintiff must allege facts supporting the following elements: [i] plaintiff is a member of a racial minority; [ii] defendant's intent to discriminate on the basis of race;

---

[5]    Plaintiff's claim that he and other Jews "could very well have been left without food" compared to "non-Jew[s]" who "have access to food" (Conf. Tr. 18:13-19) sounds not only in discrimination but also in the violation of an affirmative duty owed by the Hospital to provide free kosher food for Jewish patients. As Defendant points out (Def. Br. 7-8), federal and state food and nutrition regulations governing long-term care facilities like the Hospital require such facilities to provide long-term patients with kosher food under certain circumstances. *See* 42 C.F.R. § 483.60(c)(4) (requiring that facilities "provide each resident with a nourishing, palatable, well-balanced diet that meets his or her daily nutritional and special dietary needs," including food that "[r]eflect[s], based on a facility's reasonable efforts, the religious, cultural, and ethnic needs of the resident population"); N.Y. Pub. Health Law § 2803-c(k) (providing that in long-term medical facilities "[e]very patient shall have the right to receive upon request kosher food"). These regulations would not, however, require the Hospital to provide kosher food to Plaintiff, who concedes that he was not a patient (long- or short-term) of the Hospital, but was rather a patient of another outpatient NYU-affiliated facility located several blocks away. (Conf. Tr. 10:16-22, 20:2-10). And, in any event, Plaintiff ultimately received a free kosher meal from the Hospital's Bikur Cholim room (Conf. Tr. 16:14-17:21), likely mooting any actionable regulatory violation Plaintiff might have.

and [iii] discrimination concerning one of the statute's enumerated activities."
*James*, 247 F. Supp. 3d at 303 (internal quotation marks omitted and
alterations adopted) (quoting *Brown* v. *City of Oneonta*, 221 F.3d 329, 339 (2d
Cir. 2000)).  "Those enumerated activities include the rights to make and
enforce contracts, to sue, be parties, give evidence, and to the full and equal
benefit of all laws and proceedings for the security of persons and property."
*Id.* (internal quotation marks omitted) (quoting *Brown*, 221 F.3d at 339
(quoting 42 U.S.C. § 1981(a))).

Plaintiff does not expressly allege that he is a member of a racial
minority.  (Nor does he expressly bring a claim under Section 1981.)
Nevertheless, Defendant raises the possibility of construing Plaintiff's
allegations to include a Section 1981 claim.  (*See* Def. Br. 12).  And the Second
Circuit has expressly held that Jews are protected by Section 1981.  *See United
States* v. *Nelson*, 277 F.3d 164, 176-77 (2d Cir. 2002); *see also Shamciyan* v.
*Acacia Network, Inc.*, No. 22 Civ. 2122 (JPC), 2023 WL 6214546, at *5 n.4
(S.D.N.Y. Sept. 24, 2023) (concluding, where complaint did not allege that
plaintiff was *only* religiously Jewish, that the plaintiff "ha[d] sufficiently alleged
that he is Jewish to afford him protection from race-based discrimination
under [S]ection 1981").  However, any Section 1981 claim brought by Plaintiff
would fail because Plaintiff does not sufficiently allege discriminatory intent on
Defendant's part, *see supra* B.3.b, and the same standard for discrimination
claims applies to both claims brought under Section 1981 and Title II of the
Civil Rights Act of 1964, *see Lurch*, 2021 WL 1226927, at *4 (citing *Lizardo* v.

21

*Denny's, Inc.*, 270 F.3d 94, 104-06 (2d Cir. 2001)).  Accordingly, Plaintiff does not plausibly allege a Section 1981 claim.

### 5.  Plaintiff Fails to State a Claim Under New York Discrimination Laws[6]

The Court construes Plaintiff's allegations to raise claims under New York laws analogous to Title II, including the New York State Human Rights Law (the "NYSHRL"), the New York State Civil Rights Law (the "NYSCRL"), and the New York City Human Rights Law (the "NYCHRL").  Plaintiff fails to state a plausible discrimination claim under any of these statutes.

Plaintiff fails to state a plausible state-law discrimination claim because he fails to allege discriminatory intent by Defendant.  The NYSHRL provides, in relevant part, that it "shall be an unlawful discriminatory practice for any ... place of public accommodation ... because of the race, creed, [or] color ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."  N.Y. Exec. Law § 296(2)(a).  The term "place of public accommodation" is defined to mean "all places included in the meaning of such terms as" a host of enumerated establishments, including "clinics" and "hospitals."  *Id.* § 292(9). Unlike Title II, the list of enumerated establishments in the NYSHRL is

---

[6]    In its discretion the Court exercises supplemental jurisdiction over Plaintiff's state-law claims, which it has read into his allegations.  *See McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017) (requiring district courts to construe *pro se* employee's complaint as asserting claims under New York State Human Rights Law and New York City Human Rights Law, even if plaintiff failed to check appropriate blanks on form complaint); *cf. Jordan* v. *Chase Manhattan Bank*, 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015) (declining to exercise supplemental jurisdiction).  (*See* Def. Br. 20-21 (arguing that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims)).

considered "broad and inclusive" as "the statutory list … is illustrative, not specific." *Cahill* v. *Rosa*, 89 N.Y.2d 14, 21 (1996). The Hospital is therefore certainly a "place of public accommodation" within the meaning of the NYSHRL.

Turning to discriminatory intent, the pleading standards were generally the same for the NYSHRL as those under federal civil rights laws, *see Drayton* v. *Toys 'R' Us Inc.*, 645 F. Supp. 2d 149, 163 (S.D.N.Y. 2009) (citing *Morris* v. *Ales Grp. USA, Inc.*, No. 04 Civ. 8239 (PAC) (THK), 2007 WL 1893729, at *11 (S.D.N.Y. June 29, 2007)), until the New York legislature amended the NYSHRL on August 19, 2019, *see Syeed* v. *Bloomberg, L.P.*, 568 F. Supp. 3d 314, 343 (S.D.N.Y. 2021), *vacated and remanded on other grounds*, No. 22-1251, 2024 WL 2813563 (2d Cir. June 3, 2024) (summary order). The NYSHRL was amended to provide that its provisions "shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300. This amendment "only appl[ies] to claims that accrue on or after the effective date of October 11, 2019." *Wellner* v. *Montefiore Med. Ctr.*, No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019). "[A] cause of action for discrimination under the NYSHRL accrues … on the date of the alleged discriminatory act." *Fair Hous. Just. Ctr., Inc.* v. *JDS Dev. LLC*, 443 F. Supp. 3d 494, 504 (S.D.N.Y. 2020) (internal quotation marks omitted and alteration adopted). Here, because the alleged discriminatory act occurred on

July 6, 2023, the post-2019 amendment standard applies.  (*See* Compl. 5; Conf. Tr. 4:9-16).

Prior to the 2019 amendment, "it was generally more difficult to state a claim under the NYSHRL than under the NYCHRL."  *Syeed*, 568 F. Supp. 3d at 343.  But the 2019 amendment "render[ed] the standard for [NYSHRL] claims closer to the standard of the NYCHRL."  *Livingston* v. *City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); *see Charles* v. *City of New York*, No. 21 Civ. 5567 (JPC), 2023 WL 2752123, at *6 (S.D.N.Y. Mar. 31, 2023) (considering plaintiff's NYCHRL and NYSHRL claims together).  "The case law, however, has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law."  *Wheeler* v. *Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023); *see also Nezaj* v. *PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024).  This Court has previously assumed, for purposes of a Rule 12(b)(6) motion, that the amended NYSHRL standard aligns with that of the NYCHRL.  *See, e.g.*, *Wright* v. *City of New York*, No. 23 Civ. 3149 (KPF), 2024 WL 3952722, at *6 (S.D.N.Y. Aug. 27, 2024); *Kulick* v. *Gordon Prop. Grp., LLC*, No. 23 Civ. 9928 (KPF), 2025 WL 448333, at *8 (S.D.N.Y. Feb. 7, 2025).  It does so here as well.

Plaintiff fails to allege discriminatory intent by Defendant under the NYCHRL standard, and, necessarily, under the NYSHRL standard.  The NYCHRL provides that "[i]t shall be an unlawful discriminatory practice" for any "place or provider of a public accommodation" to "refuse, withhold from or

24

deny to [any] person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation" or to "represent to any person that any [public accommodation] is not available when in fact it is available" on the basis of such person's "actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service, height, weight, or immigration or citizenship status." N.Y.C. Admin. Code § 8-107(4)(1). The NYCHRL also forbids any employee of a public accommodation from "[d]irectly or indirectly" making any declaration that the "patronage or custom of any person is unwelcome, objectionable, not acceptable, undesired or unsolicited because of such person's actual or perceived race." *Id.* § 8-107(4)(2)(b). "To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive." *Annabi* v. *N.Y. Univ.*, No. 22 Civ. 3796 (LJL), 2024 WL 4252062, at *9 (S.D.N.Y. Sept. 20, 2024) (quoting *Gorokhovsky* v. *N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (summary order)), *aff'd*, No. 24-2601, 2025 WL 1066083 (2d Cir. Apr. 9, 2025). "New York courts have made clear that these anti-discrimination ordinances are to be construed broadly." *Benzinger* v. *NYSARC, Inc. N.Y.C. Chapter*, 385 F. Supp. 3d 224, 238 (S.D.N.Y. 2019). "Still, the liberal standards of the NYCHRL do not go so far as to establish a general civility code." *Nezaj*, 719 F. Supp. 3d at 331 (internal quotation marks omitted).

Plaintiff fails to allege differential treatment of any degree based on a discriminatory motive. Plaintiff was treated differently compared to Hospital patients not because of his religion but because he was a patient of a separate outpatient facility and not of the Hospital. In other words, the Hospital employees intended to enforce the Hospital's policy, and not to discriminate against Plaintiff. Even assuming the Hospital employees possessed independent discriminatory motives when they told Plaintiff that he could not receive the Bikur Cholim food because it was "free" (an assumption the Court does not believe to be supported by Plaintiff's allegations), Plaintiff was not treated differently because of this motive, and allowing Plaintiff to bring a NYCHRL claim based on these allegations would be to turn the NYCHRL into the "general civility code" it is not meant to be. *Nezaj*, 719 F. Supp. 3d at 331 (internal quotation marks omitted). Because Plaintiff fails to sufficiently allege discrimination under the NYCHRL, he also fails to allege discrimination under the NYSHRL, and thus the Court dismisses Plaintiff's state-law discrimination claims for failure to state a claim.[7]

### 6. Plaintiff's Allegations Do Not Entitle Him to Punitive Damages

Plaintiff seeks $36 million in punitive damages. (Compl. 6). Defendant argues that, even if Plaintiff stated a plausible discrimination claim under New

---

[7] Because Plaintiff's NYSHRL claim fails, any claim under the NYSCRL — which provides the penalties for the NYSHRL — must also be dismissed. A discrimination claim under the NYSCRL "rises and fall[s]" with the sufficiency of a discrimination claim under the NYSHRL. *Annabi* v. *N.Y. Univ.*, No. 22 Civ. 3796 (LJL), 2024 WL 4252062, at *9 (S.D.N.Y. Sept. 20, 2024), *aff'd*, No. 24-2601, 2025 WL 1066083 (2d Cir. Apr. 9, 2025) (summary order); *see also Thorne* v. *Formula 1 Motorsports, Inc.*, No. 19 Civ. 1077 (JPO), 2019 WL 6916098, at *3 (S.D.N.Y. Dec. 19, 2019).

York law, he would not be entitled to the damages he seeks. (Def. Br. 18-20). The Court need not address this argument because it has determined that Plaintiff fails to state a discrimination claim under federal or New York law. Nevertheless, the Court finds that Plaintiff cannot recover punitive damages under federal or New York law. "[T]he 'NYSHRL does not provide for punitive damages.'" *Murtha* v. *N.Y. State Gaming Comm'n*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *19 (S.D.N.Y. Sept. 17, 2019) (quoting *Weissman* v. *Dawn Joy Fashions, Inc.*, 214 F.3d 224, 235 (2d Cir. 2000)). And although punitive damages are available under the NYCHRL, to establish that he is entitled to punitive damages under the NYCHRL, Plaintiff must show that the "wrongdoer's actions amount to willful or wanton negligence, or recklessness, or … conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." *Nieves* v. *Plaza Rehab. & Nursing Ctr.*, No. 20 Civ. 1191 (JLR) (OTW), 2023 WL 4763945, at *12 (S.D.N.Y. July 26, 2023) (quoting *Duarte* v. *St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 325 (S.D.N.Y. 2018) (quoting *Chauca* v. *Abraham*, 30 N.Y.3d 325, 329 (2017))). This matter is typically analyzed at the summary judgment stage. *See id.* at *12; *Duarte*, 341 F. Supp. 3d at 325-26. And it is analyzed according to a standard that "is lower than that required to recover punitive damages under the federal civil rights laws," *Duarte*, 341 F. Supp. 3d at 325, should Plaintiff be construed to seek punitive damages for his putative Section 1981 claim. *See* 42 U.S.C. § 1981a(b)(1) (allowing for punitive damages "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or

discriminatory practices with malice or with reckless indifference to the

federally protected rights of an aggrieved individual").[8]

Plaintiff's allegations hardly amount to willful or reckless disregard of his

rights on the part of Defendant.  The Hospital employees merely informed

Plaintiff that the Hospital's policy did not allow non-patients to obtain food

from the Bikur Cholim room, and, indeed, the employees helped Plaintiff take

advantage of an exception to the policy so that he could obtain food from the

Bikur Cholim room.  Accordingly, Plaintiff does not allege sufficient facts to

allow recovery of punitive damages under the federal or New York law.[9]

## CONCLUSION

For the above reasons, Defendant's motion to dismiss is GRANTED.  The

Court dismisses the Amended Complaint with prejudice.[10]  The Clerk of Court

---

[8]    As noted previously, Title II does not allow for damages.

[9]    Plaintiff has repeatedly disclaimed seeking compensatory damages.  (Compl. 6 ("I seek nothing for myself"); Pl. Ltr. 2 ("I'm not asking for thirty[-]six million dollars for myself. I don't want money. ... I want this to be a punitive measure so that NYU never treats Jews this way again."); Pl. Opp. 2 ("Once again I would like to reiterate that I am not seeking any monetary compensation for myself.")).  Assuming *arguendo* that Plaintiff is seeking compensatory damages, he would have to establish that he suffered humiliation or mental anguish as a result of the alleged discrimination.  *See Vega-Ruiz* v. *Montefiore Med. Ctr.*, No. 17 Civ. 1804 (LTS) (SDA), 2019 WL 3080906, at *5 (July 15, 2019) ("In order to recover compensatory damages under the NYSHRL and the NYCHRL, Plaintiff must demonstrate that she suffered 'humiliation' or 'mental anguish' as a result of the alleged discrimination." (citing *Cullen* v. *Nassau Cnty. Civil Serv. Comm'n*, 53 N.Y.2d 492, 496-97 (1981)).  It is highly unlikely that Plaintiff would be able to establish that he suffered humiliation or mental anguish given that Plaintiff received — in accordance with the Hospital's policy — a free kosher meal from the Bikur Cholim room by calling and asking for one shortly after he was prevented from accessing the Bikur Cholim room.  (Conf. Tr. 16:8-17:21).

[10]    The Court permitted Plaintiff to amend his complaint by dint of the August 5, 2024 letter (Dkt. #22) and orally at the August 22, 2024 pre-motion conference (Dkt. #23).  (Conf. Tr. 23:6-9).  Plaintiff has not requested further leave to amend.  But given the analysis above, the Court does not believe that further amendment would remedy the jurisdictional and pleading deficiencies outlined in this Opinion.  *See Baines* v. *Nature's Bounty (NY), Inc.*, No. 23-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (summary order) (finding no abuse of discretion in denying leave to amend where

is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Clerk of Court is further directed to mail a copy of this Opinion and Order to Plaintiff at his address of record.

     SO ORDERED.

Dated:     June 27, 2025
           New York, New York

                                 KATHERINE POLK FAILLA
                              United States District Judge

---

plaintiffs had "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies"); *Binn* v. *Bernstein*, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4550312, at \*34 (S.D.N.Y. July 13, 2020) ("To grant Plaintiffs leave to amend would be allowing them a 'third bite at the apple,' which courts in this district routinely deny." (collecting cases)), *report and recommendation adopted*, No. 19 Civ. 6122 (GHW), 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020); *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at \*2 (S.D.N.Y. Dec. 31, 2014) (noting that "it remains 'proper to deny leave to replead where … amendment would be futile'" (quoting *Hunt* v. *Alliance N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998))); *cf. Nat'l Credit Union Admin. Bd.* v. *U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." (internal quotation marks omitted)).